**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

JOSHUA   BAXTER   and   SANDRA
SUMMERS, individually and on behalf of all
others similarly situated,

                  Plaintiffs,

    v.

CROSS   COUNTRY   HEALTHCARE,   INC.
and TRAVEL STAFF, LLC,

                  Defendants.

Case No. 9:22-cv-81137-AMC

**Jury Trial Demanded**

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Joshua Baxter and Sandra Summers file this First Amended Class and Collective

Action Complaint as a matter of right. Plaintiffs assert their class and collective claims against

Cross Country Healthcare, Inc. and its wholly owned subsidiary Travel Staff, LLC (collectively,

"Cross Country" or "Defendant"), on behalf of themselves and all others similarly situated.

Plaintiffs make the following allegations based upon personal knowledge as to their own actions

and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Travel nurses serve a valuable role in our country's healthcare system. Hospitals,

clinics, and other healthcare facilities rely on skilled travel employees to fill short-term nursing

employment gaps on a temporary basis. To fill these roles, healthcare facilities utilize intermediary

staffing agencies to employ the travelers, negotiate pay rates, and schedule assignments. Traveling

nurses have played an especially critical role since the start of the COVID-19 pandemic, as many

facilities experienced severe staffing shortages that required temporary assistance to continue

providing quality healthcare.

2.      But a troubling practice has emerged. Cross Country is offering contracts to travel nurses with a fixed-term assignment at an agreed-upon pay rate for a minimum number of hours per week. After the nurse accepts the position, incurs travel and lodging expenses, foregoes other opportunities, and starts the assignment, Cross Country makes a "take-it-or-leave-it" demand to accept less pay or be terminated. Of course, most nurses have no choice but continue working the assignment at the lower rate because they have no reasonable alternatives for comparable employment: they have already incurred travel expenses, secured short-term housing, and uprooted their lives to accept the assignment.

3.      Cross Country is knowingly engaging in these coercive "bait-and-switch" practices to maintain the significant profit margins it had become accustomed to during the COVID-19 pandemic. This lawsuit seeks recovery for the pay losses Plaintiffs and other travel nurses experienced as the result of Cross Country's predatory business practices.

4.      Additionally, Cross Country is underpaying its travel employees for overtime hours worked. By law, employers must pay their employees one-and-a-half times their "regular rate" for all hours worked over forty in a workweek. But in determining this "regular rate," Cross Country has only included its employees' direct hourly cash wage among other items, and has excluded, in violation of the law, other parts of its employees' compensation packages, thereby resulting in an artificially low rate of pay for overtime hours worked.

## JURISDICTION, VENUE, AND PARTIES

5.      Plaintiff Joshua Baxter is a citizen of Indiana who accepted a travel assignment from Cross Country to work at a healthcare facility located in Florida.  Plaintiff Baxter's written Consent to Join this case was previously filed along with the original Complaint. *See* Doc. 1-1.

6.     Plaintiff Sandra Summers is a citizen of Maryland who accepted a travel assignment from Cross Country to work at a healthcare facility in California. Plaintiff Summers' written Consent to Join this case is attached and incorporated as **Exhibit 1**.

7.     Cross Country Healthcare, Inc. is a Delaware corporation with a principal place of business located in Palm Beach County, Florida, 6551 Park of Commerce Boulevard, Boca Raton, Florida 33487.

8.     Travel Staff, LLC is a Delaware limited liability company with a principal place of business located in Palm Beach County, Florida, 6551 Park of Commerce Boulevard, Boca Raton, Florida 33487.

9.     Travel Staff, LLC, a wholly owned subsidiary of Cross Country Healthcare, Inc. Travel Staff, LLC is not truly a separate and distinct entity but a mere division of Cross Country Healthcare, Inc. as Cross Country Healthcare, Inc. controls all aspects of the policies, internal affairs, and daily operations of Travel Staff, LLC, including as to the specific policies and practices challenged in this action. Cross Country Healthcare, Inc. treats Travel Staff, LLC as a mere department or instrumentality of Cross Country Healthcare, Inc., and fails to meaningfully observe corporate formalities. Travel Staff, LLC lacks true independence from and is a legal alter ego of Cross Country Healthcare, Inc. Thus, it is proper to treat Travel Staff, LLC and Cross Country Healthcare, Inc. as one company for the purposes of this case.

10.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Cross Country and at least one class member are citizens of different states.

11.     This Court has personal jurisdiction over Cross Country as to all claims asserted by Plaintiffs herein because Cross Country is "at home" in Florida and is therefore subject to general jurisdiction in this forum.

12.     This Court also has subject matter jurisdiction over the FLSA claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because this is the District in which Cross Country resides and a substantial part of the conduct at issue in this case occurred in this District.

<u>**STATEMENT OF FACTS**</u>

**A.  Cross Country's Bait-and-Switch Tactics and Improper Pay Rate Reductions**

14.     Cross Country describes itself as "a true market leader" of healthcare staffing agencies in the United States. On its website, Cross Country represents that "[it] is a pioneering and innovative provider of market-leading workforce solutions and healthcare staffing services," whose "solutions leverage [its] more than 30 years of expertise and insight to assist clients in solving complex labor-related challenges . . . . [It is] dedicated to recruiting and placing highly qualified healthcare professionals in virtually every specialty and area of expertise." It promotes itself as a "[l]eading provider of travel nurse and allied staffing, per diem staffing, physician and advanced practice locum tenens, education staffing and physician and executive search services," as well as "[l]eading provider of workforce solutions, including Managed Service Programs (MSP), Internal Resource Pool (IRP) Electronic Medical Records (EMR) Transition Staffing,

Recruitment Process Outsourcing (RPO) and Consulting services," and it markets itself as having "20 years of MSP solutions for more than 3,100 facilities nationwide."[1]

15.     To fill temporary positions, healthcare facilities in need of temporary employment offer staffing agencies like Cross Country a "bill rate" which is a total amount they are willing to pay the staffing agency for every hour worked by a traveling nurse. The staffing agency then deducts costs, overhead, and profit margin from the bill rate and advertises the hourly rate it is willing to pay a traveling nurse to accept the facility assignment.

16.     Cross Country utilizes a form agreement entitled "assignment confirmation notice" for its traveling employees that include the following material terms: the facility name and address along with the start and end date for the assignment, the traveler's hourly pay rate and scheduled hours per week, the traveler's daily meals and incidentals allowance, the traveler's daily lodging allowance, and an overtime rate that applies to all hours worked in excess of 40 hours per week.

17.     The assignment confirmation agreement includes the statement that "I have read and agree to the terms and conditions as stated above and contained in the Cross Country Nurses Employment Terms and Conditions Booklet, which can be found at travel.crosscountry.com or that was provided to me in hard copy based on my request to 561-617-2525 and which are incorporated herein by reference and made a part of this agreement." As a matter of course, Cross Country did not provide access to this booklet online at travel.crosscountry.com as represented or provide travel nurses reasonable access to this booklet either online or elsewhere prior to executing the agreement.

18.     After accepting a travel assignment, Cross Country knows that travel employees must move to the location of the facility, secure short-term housing, and incur other significant

---

[1] https://www.crosscountryhealthcare.com/.

travel and housing related costs at their own expense in order to comply with their obligations under the agreement.

**Plaintiff Joshua Baxter**

19.     On or before March 11, 2022, Cross Country made an employment offer to Plaintiff Joshua Baxter which included a fixed-term travel assignment in Gainesville, Florida.

20.     The employment agreement offered Joshua Baxter a position at UF Health Shands Hospital from April 10, 2022 until July 9, 2022, with the following compensation package: a base hourly pay rate of $102.78 with a minimum of 36 scheduled hours per week; an overtime hourly pay rate of $187.31; a holiday hourly pay rate of $187.31; an hourly call-back rate of $171.38; a daily meals and incidentals allowance of $59.00; and a daily lodging allowance of $91.35.

21.     In reliance on the foregoing material terms, Joshua Baxter accepted Cross Country's offer of employment by executing Cross Country's form assignment confirmation agreement on March 11, 2022. To comply with his duties under the agreement, Joshua Baxter continued to travel away from his home, Indiana, to Gainesville, Florida, at his own expense, secured short-term living arrangements, and forwent other employment opportunities.

22.     Although the assignment confirmation agreement purported to incorporate terms and conditions contained in the Cross Country Nurses Employment Terms and Conditions Booklet, the booklet was never made available to Joshua Baxter either online or elsewhere prior to (or after) executing the agreement. Consequently, Joshua Baxter did not and could not agree to terms and conditions contained in a booklet that was never provided to him as there was no meeting of the minds or mutual assent regarding such terms.

23.     On April 15, 2022, about five days into the assignment and after Plaintiff Baxter had incurred considerable expense and opportunity cost, Cross Country made him a "take-it-or-

leave-it" demand to accept less pay or be terminated. Specifically, Cross Country demanded that Plaintiff Baxter accept an approximately 20% reduction in his base hourly pay rate, from $102.78 to $82.15; 16% reduction in his overtime hourly pay rate, from $187.31 to $156.94; 16% reduction in his holiday hourly pay rate, from $187.31 to $156.94; and 18% reduction in his call-back hourly pay rate, from $171.38 to $140.43; in order to complete the previously agreed-upon assignment.

24.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with his obligations under the agreement, and unable to find comparable employment in such a short period of time, Plaintiff Baxter had no choice but to continue working the assignment at the lower rate.

25.     Plaintiff Baxter completed his assignment in accordance with his duties. As a result, Joshua Baxter suffered monetary losses. At a minimum, the difference between the value of the original agreement and the unilateral pay reduction was more than $5,000.

**Plaintiff Sandra Summers**

26.     On or before March 23, 2022, Cross Country made an employment offer to Plaintiff Sandra Summers which included a fixed-term travel assignment in Walnut Creek, California.

27.     The employment agreement offered Sandra Summers a position at John Muir Medical Center from March 29, 2022, until June 25, 2022, with the following compensation package: a base hourly pay rate of $76.42 with a minimum of 36 scheduled hours per week; an overtime hourly pay rate of $114.53; a holiday hourly pay rate of $114.53; an hourly call-back rate of $136.21; a daily meals and incidentals allowance of $74.00; and a daily lodging allowance of $157.83.

28.     In reliance on the foregoing material terms, Sandra Summers accepted Cross Country's offer of employment by executing Cross Country's form assignment confirmation

notice on March 23, 2022. To comply with her duties under the agreement, Sandra Summers traveled from her home, Baltimore, Maryland, to Walnut Creek, California, at her own expense, secured short-term living arrangements, and forwent other employment opportunities.

29.     Although the assignment confirmation agreement purported to incorporate terms and conditions contained in the Cross Country Nurses Employment Terms and Conditions Booklet, the booklet was never made available to Sandra Summers either online or elsewhere prior to (or after) executing the agreement. Consequently, Sandra Summers did not and could not agree to terms and conditions contained in a booklet that was never provided to her as there was no meeting of the minds or mutual assent regarding such terms.

30.     On April 27, 2022, about one month into the assignment, Cross Country made Sandra Summers a "take-it-or-leave-it" demand to accept less pay or be terminated. Specifically, Cross Country demanded that Sandra Summers accept an approximately 22% reduction in her base hourly pay rate, from $76.42 to $59.46; 22% reduction in her overtime hourly pay rate, from $114.53 to $89.19; 22% reduction in her holiday hourly pay rate, from $114.53 to $89.19; and 19% reduction in her call-back hourly pay rate, from $136.21 to $110.77; in order to complete the previously agreed-upon assignment.

31.     Having already spent substantial time and money securing the assignment and taking the steps necessary to ensure compliance with her obligations under the agreement, and unable to find comparable employment in such a short period of time, Sandra Summers had no choice but to continue working the assignment at the lower rate.

32.     Plaintiff Sandra Summers completed her assignment in accordance with her duties. As a result, Sandra Summers suffered monetary losses. At a minimum, the difference between the

value of the original agreement and the value of the take-it-or-leave-it demand was more than $5,000.

33.     Plaintiffs are not alone. Hundreds, if not thousands, of traveling nurses and other healthcare workers employed by Cross Country have reported experiencing similar "take-it-or-leave it" pay cuts in the middle of their contractual terms. Plaintiffs and other similarly situated employees relied on the material terms of their agreements including: the fixed assignment term, the payment package, and the guaranteed hours or days in accepting their offers; as the assignment had to be worth foregoing other employment, relocating, and incurring the associated professional and personal costs of accepting the travel assignment. In addition, Plaintiffs and other similarly situated employees relied on the fact the foregoing material terms could not be changed without additional consideration and the reasonable expectation that Cross Country would act in good faith and fair dealing and honor its promises or representations. Plaintiffs and other similarly situated employees would not have accepted the agreement had they known that Cross Country would violate the terms and spirit of the agreement.

34.     By making the take-it-or-leave-it demands described above, after Plaintiffs relied on Cross Country's representations and undertook obligations under the agreement, Cross Country breached its contracts with Plaintiffs—specifically the promises of employment at a specified rate of pay for a fixed-term assignment. Cross Country made these take-it-or-leave-it-demands in breach of the express terms of the contract and implied duty of good faith and fair dealing.

35.     There is no legal justification for Cross Country's conduct. Even if Cross Country's client no longer needed as much staff or decided to reduce the bill rate, for example, nothing in the terms of the form agreement authorizes Cross Country to unilaterally adjust pay rates to account for new circumstances, whether foreseeable or not.

36.     The "revised" agreements that Plaintiffs and other similarly situated employees were coerced to sign are not enforceable because an effective contract modification or accord requires the exchange of new consideration. As alleged herein, there was no exchange of new consideration because Plaintiffs were compelled to undertake the same obligations for less pay. Consequently, Cross Country cannot relieve itself of its contractual obligations under one contract by coercing acceptance of a second contract with less favorable terms.

**B.  Cross Country's Miscalculation of Its Employees' Regular Rate of Pay and Resulting Failure to Lawfully Pay Overtime.**

37.     By law, employers must pay their employees one-and-half times their "regular rate" for all overtime hours (*i.e.*, hours over 40 in a single workweek) worked. In addition to the bait-and-switch tactics discussed above, the reduced overtime rate that Cross Country paid putative class members failed to compensate them at 1.5 times their regular rate of pay in violation of the Fair Labor Standards Act and state overtime statutes.

38.     As a general matter, an employee's "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," but excludes, *inter alia*, "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e).

39.     In calculating the overtime rate paid to its employees, Cross Country wrongfully excluded from their regular rate various stipends and allowances paid to its employees, including a "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Allowance," and "Lodging Allowance," even though these payments functioned as a form of compensation as part of its' employees' pay package.

40.   For example, Plaintiff Sandra Summers was paid overtime at an original rate of $114.63 per hour, or 1.5 times her original base hourly pay rate of $76.42, and a reduced rate of $89.19 per hour, or 1.5 times her reduced hourly pay rate of $59.46. Her "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Allowance," and "Lodging Allowance" were not included in the calculation of her original or reduced regular rate.

41.   Plaintiff Sandra Summers worked more than 40 hours in multiple workweeks during her contract with Cross County during which these forms of compensation were not included in her regular rate of pay in violation of federal and state law.

42.   In the workweek beginning on March 27, 2022 and ending on April 2, 2022, Plaintiff Summers worked 42 hours meaning that she was owed 1.5 times her regular rate for the two hours worked over 40 hours in a single workweek under both federal and California law.  Also during that workweek, Plaintiff Summers worked 12 hours on March 29, 10 hours on March 31, and 12 hours on April 1, meaning that she was owed 1.5 times her regular rate for a total of 9 hours that were worked over eight hours in a single day under California law.  However, in calculating her regular rate of pay for hours over 40 in the workweek and hours over eight in a single workday, Cross County failed to include non-discretionary pay that it titled "Meals and Incidental Allowance" and "Lodging Allowance."  In that workweek, Plaintiff Summers worked 42 hours at her base hourly rate of $76.42.  She was paid overtime for hours over 40 in a workweek and hours over eight in a workday at $114.63 per hour.  But, during that workweek, Cross Country paid her non-discretionary wages of $789.15 for "Lodging Allowance" and $370 for "Meals and Incidental Allowance."  When the $1,159.15 of non-discretionary wages are included in her regular rate of pay as required by federal and California law, Plaintiff Summers' regular rate of pay during that workweek was $104.02 per hour.  Multiplying that rate by 1.5 as required by federal (*see* 29 U.S.C.

§ 207(a)) and California law (Cal. Lab. Code § 510(a)) required her to be paid overtime at a rate of, at least, $156.03 per hour.  Thus, during that workweek, Cross Country underpaid Plaintiff Summers overtime by approximately $413.

43.    In addition, Cross Country failed to pay Plaintiff Summers double time at the correct regular rate of pay for hours over 12 in a single workday in violation of California law. For example, in the workweek beginning April 3, 2022 and running through April 9, 2022, Plaintiff Summers worked 12.2 hours on April 4 and 12.28 hours on April 6 at her hourly rate of $76.42 per hour.  Cross Country paid her for 8 hours of overtime at an hourly rate of $114.63 and paid her for 0.3 hours of double time at an hourly rate of $152.84.  Under California law, she was owed 1.5 times her regular rate of pay for 8 hours and double her regular rate of pay for .3 hours.  However, again, Cross Country failed to include $1,104.81 for "Lodging Allowance" and $518 for "Meals and Incidental Allowance" in her regular rate of pay when calculating her overtime and double time payments.  When that $1,622.81 in non-discretionary wages is factored into her regular rate of pay as required by federal and California law, Plaintiff Summers' regular rate of pay during that workweek was $143.20 per hour.  Multiplying that rate by 1.5 as required by federal (*see* 29 U.S.C. § 207(a)) and California law (Cal. Lab. Code § 510(a)) required her to be paid overtime for hours over 40 in a workweek and hours over 8 in a workday at a rate of, at least, $214.80 per hour. Further, Cross Country failed to pay her double her regular rate (or $286.40 per hour) for all hours over 12 in a single workday. Thus, during that workweek, Cross Country underpaid Plaintiff Summers overtime by approximately $860 for hours over 8 in a single workday and hours over 12 in a single workday. Cross Country similarly underpaid Plaintiff Summers overtime in violation of federal and California law in the following workweeks: April 3 to April 9, 2022; April 10 to April 16, 2022; April 17 to April 23, 2022; April 24 to April 30, 2022; May 1 to May 7, 2022;

May 8 to May 14, 2022; May 15 to May 21, 2022; May 22 to May 28, 2022; May 29 to June 4, 2022; June 5 to June 11, 2022; June 12 to June 18, 2022; and June 19 to June 25, 2022.

44.     Cross Country's exclusion of the various pay rates, stipends, and allowances paid to its employees, including the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Allowance," and "Lodging Allowance," from said employees' "regular rate" in calculating overtime was wrongful and in violation of the law, in that:

   a.  Said payments functioned as compensation for the employees' hours of employment;

   b.  Said payments were tied to the number of hours worked, rather than the amount of expenses actually incurred;

   c.  Said payments varied with the number of hours worked per week, such that if an employee missed one or more shifts, said payments would be reduced a corresponding amount regardless of the reason for missing the shift.  For example, Cross County reduced Plaintiff Summers' allowances by approximately $465 during her first week of work because her first shift was on Tuesday despite the fact she had already incurred the travel and lodging expenses to arrive earlier that week;

   d.  Said payments did not vary with the amount of expenses an employee actually incurred, nor were they calculated to approximate actual expenses. Employees were not required to document expenses, nor provide any attestation that he or she actually incurred a particular amount of expenses in a given period;

   e.  Upon information and belief, said payments were not limited to employees who were actually traveling, but instead could be received by local employees who worked proximate to their residence; and

13

     f.   Upon information and belief, employees could roll over extra shifts worked in a previous week avoid a *pro rata* reduction in said payments occasioned by having missed one or more shifts in a given week.

45.    Cross Country classified this form of compensation as expense reimbursement to avoid paying payroll taxes on these wages and to avoid paying materially increased overtime rates, particularly given that many travel nurses are guaranteed more than 40 hours per week.

46.    As a result of Cross Country's failure to properly calculate its employees' regular rates, Plaintiffs and other similarly situated employees were not paid for all overtime worked in accordance with the law.

## ALLEGATIONS COMMON TO ALL FLSA CLAIMS

47.    At all times material herein, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

48.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

49.    At all relevant times, Cross Country has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has an annual gross volume of sales made or business done of not less than $500,000.

50.     During all relevant times to this action, Cross Country acted as the "employer" of Plaintiffs and other similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

51.     During all times relevant to this action, Plaintiffs and other similarly situated employees were Cross Country's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

52.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

53.     Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

54.     Plaintiffs and other similarly situated employees are victims of uniform and unlawful compensation policies.

55.     Plaintiffs and other similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Cross Country acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

56.     Cross Country has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Cross Country acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and other

similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

57.     As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Cross Country from Plaintiffs and other similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Cross Country is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## CROSS COUNTRY AND TRAVEL STAFF JOINTLY EMPLOYED PLAINTIFF

58.     As alleged above, Cross Country and its wholly-owned subsidiary Travel Staff are alter egos of one another and should be considered the same corporate entity for purposes of this litigation.

59.     To the extent the Court finds that Cross Country and Travel Staff should be treated as separate entities, both entities jointly employed Plaintiffs and other similarly situated travel nurses within the meaning of the FLSA and state law.

60.     Travel Staff acknowledges employing Plaintiffs and similarly situated travel nurses.  Due to the pervasive control Cross Country exercised over the terms and conditions of the employment of Plaintiffs and similarly situated travel nurses, Cross Country jointly employed these workers along with Travel Staff.

61.     Upon information and belief, Cross Country controls all aspects of Travel Staff's business.  Plaintiffs and similarly situated employees, Cross Country controls the employment relationship as a matter of economic reality. Cross Country instructs Travel Staff (to the extent there is a difference between the two) on how and when to execute employment policies.  Travel Staff must and do follow Cross Country's operational instructions.  Due to the pervasive control

Cross Country both possesses and exercises over the employees at Travel Staff (both directly and indirectly), Cross Country is a joint employer of Plaintiffs and all other similarly situated travel nurses.

62.     Upon information and belief, Cross Country maintains complete control over the policies and procedures for employees at Travel Staff.

63.     Upon information and belief, at all relevant times, Cross Country, with and through Travel Staff (to the extent there is even a difference between the two), jointly employed Plaintiffs (and other similarly situated travel nurses) because:

        a.      Cross Country had the right to and did exercise control over the hiring and firing of Plaintiffs and all other similarly situated travel nurses;

        b.      Cross Country had the right to and did supervise the work schedules, conditions of employment, and the manner in which Plaintiffs and all other similarly situated travel nurses performed their jobs;

        c.      Cross Country had the right to and did determine the rate and method of payment for Plaintiffs and all other similarly situated travel nurses; and

        d.      Cross Country was primarily responsible for and did maintain the employment records for Plaintiffs and all other similarly situated employees.

64.     To the extent Cross Country and Travel Staff are not alter egos of one another, Cross Country and Travel Staff jointly employed Plaintiffs and all similarly situated travel nurses.

## CLASS ACTION ALLEGATIONS

65.     <u>Class Definitions</u>: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the foregoing classes and subclasses, defined as follows:

The Class: All persons who entered into an Assignment Confirmation Notice agreement with Cross Country and whose total compensation was reduced before the end of the agreed upon term.

State Wage Payment Laws Class: All persons who entered into an Assignment Confirmation Notice agreement with Cross Country to work at a facility or location in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming and whose total compensation was reduced before the end of the agreed upon term.

The California Class: All persons who entered into an Assignment Confirmation Notice agreement with Cross Country to work at a facility or location in California, or who traveled from California to an assignment in another state, and whose total compensation was reduced before the end of the agreed upon term.

State Unpaid Overtime Class: All persons who entered into an Assignment Confirmation Notice agreement with Cross Country to work at a facility or location in Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Kentucky, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, West Virginia, or Wisconsin who worked more than 40 hours in a workweek, 8 hours in a day, or 12 hours in a day and whose regular rate of pay did not include the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Allowance," and "Lodging Allowance" (or their equivalents by any other name).

66.     Excluded from the Class are the Court and its officers, employees, and relatives; Cross Country and its subsidiaries, officers, and directors; and governmental entities.

67.     Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Cross Country employs thousands of similarly situated individuals across the United States.

68.     All members of the Class are ascertainable by reference to objective criteria, as Cross Country has access to addresses and other contact information for Class members that can be used for notice purposes.

69.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

     a.  Did Cross Country make actionable misrepresentations or omissions?

     b.  Were Cross Country's promises, representations, or omissions false or misleading?

     c.  Did Cross Country intend for Plaintiffs and the Class to rely on its promises, representations, or omissions?

     d.  Should Cross Country have known that such promises or representations would cause justifiable or reasonable reliance?

     e.  Did Cross Country owe a duty to disclose to Plaintiffs and the Class to not conceal the truth?

     f.  Did Cross Country's conduct in reducing compensation packages breach the travel assignment agreements?

     g.  Did Cross Country act in bad faith?

     h.  Did Cross Country engage in fraudulent concealment?

     i.  Did Cross Country's conduct violate state wage payment statutes?

     j.  Did Cross Country fail to include certain forms of non-discretionary compensation in Plaintiffs and class members' regular rate of pay?

70.     <u>Typicality</u>: Plaintiffs' claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Cross Country, the same fraudulent business practice, and are based on the same legal theories.

71.     <u>Adequacy of Representation</u>: Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members whom they seek to represent.

Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

72.     <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

73.     To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## **COLLECTIVE ACTION ALLEGATIONS**

74.     Plaintiff Sandra Summers brings Count VIII, the FLSA claim arising out of Cross Country's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

> All persons currently or formerly employed by Cross Country who worked more than 40 hours in a workweek and whose regular rate of pay did not include the "Holiday" pay, "Charge" pay, "On Call" pay, "Call Back" pay, "Meals and Incidentals Allowance," and "Lodging Allowance" (or their equivalents by any other name) at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present.

Plaintiff's FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

58.     Plaintiff Sandra Summers, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Cross Country's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Cross Country's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT
#### *On Behalf of Plaintiffs and the Class*

59.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

60.     Cross Country offered Plaintiffs and class members employment by certain written terms in the agreement.

61.     As consideration for their agreement, Cross Country agreed, among other things, to employ, pay, and provide certain benefits to Plaintiffs and class members under their respective agreements; and Plaintiffs and class members agreed, among other things, to provide undertake certain obligations.

62.     The parties mutually assented to the agreement.

63.     Plaintiffs and class members accepted Cross Country's offer of employment by executing the agreement.

64.     After the parties entered the agreement, Cross Country materially breached the agreement by failing to pay Plaintiffs and class members the amounts they promised.

65.     In making take-or-leave-it pay reductions under circumstances where Cross Country knew Plaintiffs and class members would have no choice but to continue working despite the unilateral pay reduction, Cross Country also deliberately breached the implied covenant of good faith and fair dealing inherent in the parties' agreements.

66.     Before the breaches, all conditions precedent had been fulfilled.

67.     Plaintiffs' and class members' damages would not have occurred but for Cross Country's breaches and Cross Country's breaches proximately caused Plaintiffs' and class members' damages.

68.     Following the breaches, Plaintiffs and class members made all reasonable efforts to mitigate resulting damages.

69.     Plaintiffs' and class members' damages include the difference in compensation agreed to under the agreement and the actual compensation Plaintiffs and class members received, as well as the costs, expenses, and losses Plaintiffs and class members incurred as a natural and foreseeable result or consequence of Cross Country's breaches.

<u>**SECOND CAUSE OF ACTION: PROMISSORY ESTOPPEL**</u>
*On Behalf of Plaintiffs and the Class*

70.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

71.     Cross Country made clear and unambiguous promises to Plaintiffs and class members regarding their pay rates that it knew or should have known would induce Plaintiffs and class members to enter into employment agreements with Cross Country and incur certain costs and expenses associated with relocation and housing.

72.     Plaintiffs and class members reasonably relied on such promises in entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

73.     Cross Country's promises in fact induced Plaintiffs and class members to enter into employment agreements, relocate, and incur certain expenses, costs, and losses. Cross Country knew and intended for Plaintiffs and class members to rely on these promises.

74.     It would be unjust to allow Cross Country to profit from making such inducing promises and not fulfilling them.

75.     This injustice can only be avoided by forcing Cross Country to fulfill these promises.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT
*On Behalf of Plaintiffs and the Class*

76.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

77.     Plaintiffs and class members conferred a benefit upon Cross Country by filling open healthcare positions that permitted Cross Country to profit as an intermediary staffing agency.

78.     Cross Country appreciated and had knowledge of the benefit Plaintiffs and class members conferred on it.

79.     Cross Country, by making take-it-or-leave-it demands to reduce Plaintiffs' and class members' pay rates or total compensation in the middle of their contractual terms, kept money that was contractually promised to Plaintiffs and class members and, therefore, accepted and retained benefits under such circumstances as to make it inequitable for Cross Country to retain such benefits without payment of its value.

80.     Under the circumstances, Cross Country should in justice and fairness be compelled to give its benefit to Plaintiffs and class members.

### FOURTH CAUSE OF ACTION: FRAUDULENT INDUCEMENT
*On Behalf of Plaintiffs and the Class*

81.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

82.     Cross Country made material representations of fact to Plaintiffs and class members about their pay rates and total compensation that were false or misleading.

23

83. At the time it made such representations, Cross Country knew that its representations were false and it would pay Plaintiffs and class members less than the amounts it promised if it so determined.

84. Cross Country's misrepresentations were made with the purpose to defraud Plaintiffs and class members.

85. At the time it made such representations, Cross Country knew Plaintiffs and class members would justifiably rely on its representations in entering into their travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

86. Cross Country had a duty to disclose its representations were false or misleading because Cross Country had superior knowledge that was not reasonably available to Plaintiffs and class members, Plaintiffs and class members were entitled to know given the relation of trust and confidence between them, and disclosure was necessary to prevent Plaintiffs and class members from being misled or mistaken.

87. Plaintiffs and class members did not know Cross Country's representations regarding their pay rate were false or misleading and had a right to rely on and reasonably relied on them in entering into travel assignment agreements, relocating, and incurring certain expenses, costs, and losses.

88. As a result of Cross Country's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

### FIFTH CAUSE OF ACTION: FRAUDULENT CONCEALMENT
_On Behalf of Plaintiffs and the Class_

89. Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

90.     As their prospective employer, Cross Country owed Plaintiffs and class members a duty to disclose the fact that Cross Country would unilaterally reduce their pay rates or total compensation after they accepted a position that required relocating, and incurring certain expenses, costs, and losses.

91.     Cross Country intended to defraud or deceive Plaintiffs and class members.

92.     Plaintiffs and class members justifiably relied on Cross Country's fraudulent concealment by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

93.     As a result of Cross Country's fraudulent inducement, Plaintiffs and class members sustained damages as described herein.

## SIXTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
### _On Behalf of Plaintiffs and the Class_

94.     Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

95.     As their prospective employer, Cross Country owed Plaintiffs and class members a duty or reasonable care to not make false or misleading statements regarding their employment.

96.     Cross Country knew, should have known, or recklessly disregarded that its representations to Plaintiffs and class members regarding their pay rates and overall compensation reflected in the travel assignment agreements were false or misleading, because it was reasonably foreseeable that Cross Country would make a "take-it-or-leave-it" demand to accept less compensation or be terminated after acceptance of the initial offer.

97.     Cross Country intended for Plaintiffs and class members to act on the false or misleading statements.

98.     Cross Country knew or should have known that Plaintiffs and class members would rely on the false or misleading statements.

99.     Cross Country breached its duty of reasonable care by making the false or misleading statements and thus failing to act as a reasonably prudent person would have under the same or similar circumstances by not making those statements.

100.    Plaintiffs and class members justifiably relied on Cross Country's negligent misrepresentations by entering into employment agreements, relocating, and incurring certain expenses, costs, and losses.

101.    As a result of Cross Country's negligent misrepresentations, Plaintiffs and class members sustained damages as described herein.

**SEVENTH CAUSE OF ACTION: VIOLATION OF
STATE WAGE PAYMENT LAWS**
*On Behalf of Plaintiffs and the State Wage Payment Laws Class*

102.    Plaintiffs hereby repeat, reiterate, and incorporate by reference each of the foregoing allegations with the same force and effect as if set forth herein.

103.    At all times relevant to this action, Plaintiffs and class members were employed by Cross Country.

104.    Cross Country's course of conduct described above violated wage payment laws of the states listed herein by failing to pay all wages due or owed to Plaintiffs and other similarly situated employees for which the company had agreed to pay. Cross Country's failure to pay all wages due and owing to its employees is in violation of the following state wage payment laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a.   Alaska – Alaska Stat. § 23.05.140 *et seq.*;

    b.   Arizona – Ariz. Rev. Stat. Ann. § 23–351 *et seq.*;

26

    c.   Arkansas – Ark. Code Ann. § 11–4–401 *et seq.*;

    d.   California – Cal. Lab. Code § 204 *et seq.*;

    e.   Colorado – Colo. Rev. Stat. § 8–4–101 *et seq.*;

    f.   Connecticut – Conn. Gen. Stat. Ann. § 31–71b *et seq.*;

    g.   Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

    h.   Florida – Fla. Stat. Ann. § 448.08 *et seq.*;

    i.   Georgia – Ga. Code Ann. § 34–7–2 *et seq.*; Ga. Code Ann. § 51-1-6 *et seq.*;

    j.   Hawaii – Haw. Rev. Stat. § 388–2 *et seq.*;

    k.   Idaho – Idaho Code Ann. § 45–608 *et seq.*;

    l.   Illinois – 820 ILCS 115/1 *et seq.*;

    m.   Indiana – Ind. Code Ann. § 22-2-5–1 *et seq.*;

    n.   Iowa – Iowa Code Ann. § 91A.3 *et seq.*;

    o.   Kansas – Kan. Stat. Ann. § 44–314 *et seq.*;

    p.   Kentucky – Ky. Rev. Stat. Ann. § 337.020 *et seq.*;

    q.   Louisiana – La. Rev. Stat. Ann. § 23:631 *et seq.*;

    r.   Massachusetts – Mass. Gen. Laws Ann. ch. 149, § 148 *et seq.*;

    s.   Minnesota – Minn. Stat. Ann. § 181.101 *et seq.*;

    t.   Mississippi – Miss. Code. Ann. § 71–1–35 *et seq.*;

    u.   Missouri – Mo. Ann. Stat. § 290.080 *et seq.*;

    v.   Montana – Mont. Code Ann. § 39–3–204 *et seq.*;

    w.   Nebraska – Neb. Rev. Stat. § 48–1230 *et seq.*;

    x.   Nevada – Nev. Rev. Stat. Ann. § 608.060 *et seq.*;

    y.   New Hampshire – N.H. Rev. Stat. Ann. § 275:43 *et seq.*;

z.  New Jersey – N.J. Stat. Ann. § 34:11–4.2 *et seq.*;

aa. New Mexico – N.M. Stat. Ann. § 50–4–26 *et seq.*;

bb. New York – N.Y. Lab. Law § 191 *et seq.*;

cc. North Carolina – N.C. Gen. Stat. Ann. § 95–25.6 *et seq.*;

dd. North Dakota – N.D. Cent. Code Ann. § 34–14-02 *et s–q.*;

ee. Ohio – Ohio Rev. Code Ann. § 4113.15 *et seq.*;

ff.  Oklahoma – Okla. Stat. Ann. tit. 40, § 165.2 *et seq.*;

gg. Oregon – Or. Rev. Stat. Ann. § 652.120 *et seq.*;

hh. Pennsylvania – 43 Pa. Stat. Ann. § 260.3 *et seq.*;

ii.  Rhode Island – R.I. Gen. Laws Ann. § 28–14–2.2 *et seq.*;

jj.  South Carolina – S.C. Code § 41–10–10 *et seq.*;

kk. South Dakota – S.D. Codified Laws § 60–11–1 *et seq.*;

ll.  Utah – Utah Code Ann. § 34–28–3 *et seq.*;

mm.    Vermont – Vt. Stat. Ann. tit. 21, § 342 *et seq.*;

nn. Virginia – Va. Code Ann. § 40.1–29 *et seq.*;

oo. Washington – RCW 49.48 *et seq.*;

pp. West Virginia – W. Va. Code Ann. § 21–5–3 *et seq.*;

qq. Wisconsin – Wis. Stat. Ann. § 109.03 *et seq.*; and

rr.  Wyoming – Wyo. Stat. Ann. § 27–4–101 *et seq.*

105.   Cross Country maintains a company–wide policy and practice of failing and refusing to pay wages due and owing to Plaintiffs and other similarly situated employees, and said policy is willful in nature and not the result of a good-faith mistake.

## EIGHTH CAUSE OF ACTION: VIOLATION OF
## CALIFORNIA LABOR CODE § 970
### *On Behalf of Plaintiff Summers and the California Class*

106.     Plaintiff Summers hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

107.     California Labor Code § 970 prohibits employers from influencing or persuading an employee to relocate from one place to another for work, by means of knowingly false misrepresentations regarding, among other things, the kind, character, or existence of such work; the length of time such work will last; or the compensation therefor. Cal. Lab. Code § 970.

108.     Cross Country made representations to Plaintiff Summers and members of the California Class (collectively "Plaintiffs" for purposes of this count) concerning the kind or character of the work, the length of time the work would last, or the compensation therefor.

109.     Cross Country's representations were false, for the reasons alleged herein.

110.     Cross Country knew when the representations were made that they were false.

111.     Cross Country intended that Plaintiffs would rely on its false representations.

112.     Plaintiffs relied on Cross Country's false representations and relocated for the purpose of working for Cross Country.

113.     As a result of Cross Country's misrepresentations, Plaintiffs were harmed, and their reliance on the Cross Country's representations was a substantial factor in causing such harm.

## NINTH CAUSE OF ACTION: UNPAID OVERTIME UNDER THE FLSA
### *On Behalf of Plaintiff Summers and the Nationwide FLSA Collective*

114.     Plaintiff Summers hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

115.     At all times relevant to this action, Plaintiff Summers and other similarly situated employees (collectively "Plaintiffs" for purposes of this count) were employed by Cross Country.

116.    Cross Country violated the FLSA by failing to pay Plaintiffs for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

117.    Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay. The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

118.    Cross Country improperly reduced its employees' regular rate when calculating overtime by wrongfully excluding certain forms of compensation, including stipends and allowances.

119.    In so doing, Cross Country failed to properly compensate Plaintiffs for overtime worked pursuant to the FLSA.

120.    Cross Country is not eligible for any FLSA exemption excusing their failure to pay overtime.

121.    Plaintiffs are victims of a uniform, company-wide compensation policy.

122.    Plaintiffs are entitled to damages equal to the mandated overtime premium pay within the three years preceding their joining this action, plus periods of equitable tolling, because Cross Country acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

123.    Cross Country has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount

of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Cross Country did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

**TENTH CAUSE OF ACTION: VIOLATION OF**
**STATE OVERTIME STATUTES**
*On Behalf of Plaintiff Summers and the State Unpaid Overtime Class*

124.    Plaintiff Summers hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

125.    At all times relevant to this action, Plaintiff Summers and other similarly situated employees (collectively "Plaintiffs" for purposes of this count) were employed by Cross Country.

126.    Cross Country's course of conduct described herein violated the various overtime statutes of the several states listed in the subsequent paragraph by improperly excluding from its employees' regular rate certain forms of compensation, including stipends and allowances, thereby resulting in unpaid overtime owed to Plaintiffs.

127.    Cross Country's failure to pay overtime to its employees is in violation of the following state overtime laws, each of whose relevant terms are materially equivalent such that a common violation may be established on a class-wide basis:

    a.    Alaska – Alaska Stat. § 23.10.060 *et seq.*;

    b.    California – Cal. Lab. Code § 510 *et seq.*;

    c.    Colorado – Colo. Rev. Stat. §§ 8–6–101 *et seq.*; 7 Colo. Code Regs § 1103–1(4) *et seq.*;

    d.    Connecticut – Conn. Gen. Stat. Ann. § 31–76c *et seq.*;

    e.    Delaware – Del. Code Ann. tit. 19, § 1102 *et seq.*;

    f.    Florida – Fla. Stat. Ann. § 448.08 *et seq.*; Fla. Stat. Ann. § 488.01 *et seq.*;

    g.    Georgia – Ga. Code Ann. § 9-3-22 *et seq.*;

h.  Hawaii – Haw. Rev. Stat. Ann. § 387–3 *et seq.*;

i.  Illinois – 820 Ill. Comp. Stat. Ann. 105/4a *et seq.*;

j.  Kentucky – Ky. Rev. Stat. Ann. § 337.285 *et seq.*;

k.  Michigan – Mich. Comp. Laws Ann. § 408.414a *et seq.*;

l.  Minnesota – Minn. Stat. Ann. § 177.23 *et seq. et seq.*;

m.  Missouri – Mo. Ann. Stat. § 290.505 *et seq.*;

n.  Montana – Mont. Rev. Code Ann. § 39–3–405 *et seq.*;

o.  Nevada – Nev. Rev. Stat. § 608.018 *et seq.*;

p.  New Hampshire – N.H. Rev. Stat. Ann. § 279:21 *et seq.*:

q.  New Jersey – N.J. Stat. Ann. § 34:11–56a4 *et seq.*;

r.  New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.*;

s.  New York – N.Y. Comp. Codes R. & Regs. tit 12, § 142–3.2 *et seq.*;

t.  North Carolina – N.C. Gen. Stat. Ann. § 95–25.4 *et seq.*;

u.  North Dakota – N.D. Admin. Code 46–02–07–02(4) *et seq.*;

v.  Ohio – Ohio Rev. Code Ann. § 4111.03 *et seq.*;

w.  Oklahoma – Okla. Stat. Ann. tit. 74, § 840–2.15 *et seq.*;

x.  Oregon – Or. Rev. Stat. Ann. §§ 653.055, 653.261 *et seq.*;

y.  Pennsylvania – 43 Pa. Stat. Ann. § 333.104 *et seq.*;

z.  Rhode Island – 28 R.I. Gen. Laws Ann. § 28–12–4.1 *et seq.*;

aa. Vermont – Vt. Stat. Ann. tit. 21, § 384 *et seq.*;

bb. Virginia – Va. Code Ann. § 40.1–29.2 *et seq.*;

cc. Washington – Wash. Rev. Code Ann. § 49.46.130 *et seq.*;

dd. West Virginia – W. Va. Code Ann. § 21–5C–3 *et seq.*; and

32

ee. Wisconsin – Wis. Admin. Code DWD § 274.015 *et seq.*

128.    Cross Country maintains a uniform, company-wide policy and practice of miscalculating the overtime rate, and said policy is willful in nature and not the result of a good faith mistake.

### ELEVENTH CAUSE OF ACTION: VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
#### *On Behalf of Plaintiff Summers and the California Class*

129.    Plaintiff Summers hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

130.    The California Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq.* Cross Country has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200.

### Unlawful

131.    Cross Country's unlawful conduct under the Unfair Competition Law includes, but is not limited to, violating California Labor Code § 970, and the other statutes and regulations alleged herein.

### Unfair

132.    Cross Country's business practices, as alleged herein, violate the "unfair" prong of the Unfair Competition Law because they resulted in Plaintiffs and members of the California Class being misled and denied pay for wages they earned and were promised pursuant to their binding employment agreements. Further, said business practices offend established public policy and are immoral, unethical, and unscrupulous or substantially injurious to employees.

133.    Any reasons, justifications, or motives that Cross Country may offer for the practices described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiffs and the California Class are substantial and are not outweighed by any countervailing benefits to consumers or competition.

**Fraudulent**

134.    Cross Country's conduct, as described herein, is fraudulent because it is likely to deceive members of the public.

135.    Cross Country's bait-and-switch tactics were indeed calculated to deceive—and in fact did deceive—Plaintiffs and members of the California Class into accepting travel nursing assignments at a promised rate of pay, only to have that promised rate reduced after they had undertaken obligations under the agreement.

136.    Plaintiffs and members of the California Class have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Cross Country's misconduct described herein.

137.    Furthermore, Plaintiffs and the California Class seek restitutionary disgorgement from Cross Country and public injunctive relief prohibiting Cross Country from engaging in the unlawful, unfair, and/or fraudulent conduct alleged herein.

138.    Plaintiffs and members of the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Cross Country's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Cross Country as follows:

A.      That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives, and appoint Plaintiffs' counsel as Class Counsel;

B.      That the Court award Plaintiffs and the Class or Subclass(es) compensatory, consequential, general, nominal, and statutory (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

C.      That the Court issue notice to all similarly situated employees of Cross Country informing them of their right to file consents to join the FLSA portion of this action;

D.      That the Court award Plaintiff Summers and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

E.      That the Court award Plaintiff Summers and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

F.      That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

G.      That the Court award pre-and post-judgment interest at the maximum legal rate;

H.      That the Court disgorge any unjust enrichment or revenue Cross Country gained from its unjust business practices, including the practice of making mid-contract take-it-or-leave-it demands without fair and just compensation; and

I.      That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all claims so triable.

Dated: August 12, 2022                    Respectfully submitted:

**SHAVITZ LAW GROUP, P.A.**

*/s/ Gregg I. Shavitz*
Gregg I. Shavitz
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Fax: (561) 447-8831
gshavitz@shavitzlaw.com

**STUEVE SIEGEL HANSON LLP**
J. Austin Moore*
Alexander T. Ricke*
K. Ross Merrill*
*pro hac vice applications pending or forthcoming*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
moore@stuevesiegel.com
ricke@stuevesiegel.com
merrill@stuevesiegel.com

***Attorneys for Plaintiffs and the Putative Class and Collective***

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF system on August 12, 2022, which will effectuate service on all counsel of record.

*/s/ Gregg I. Shavitz*
Counsel for Plaintiff