UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:22-CV-81137-Cannon

JOSHUA BAXTER and SANDRA
SUMMERS, individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

CROSS COUNTRY HEALTHCARE, INC.
and TRAVEL STAFF, LLC,

    Defendants.

**DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE CASE**

Defendants Cross Country Healthcare, Inc. ("CCH") and Travel Staff, LLC ("TS") (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Rules 12(b) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to compel to arbitration Plaintiff Joshua Baxter's ("Baxter") and Plaintiff Sandra Summers's ("Summers") (collectively, "Plaintiffs") claims and dismiss with prejudice the putative class and collective action First Amended Complaint ("Complaint" or "Compl."; Dkt. No. 11).[1]

---

[1] Defendants previously filed a similar motion to compel with respect to Plaintiff Baxter. (Dkt. No. 15.) Thereafter, Defendants agreed to accept service of the First Amended Complaint, which added Plaintiff Sandra Summers but which had not been served upon Defendants prior to their initial motion to compel. (Dkt. No. 17.) Defendants' submission of this motion postpones their deadline for filing a responsive pleading, which Defendants otherwise expressly reserve to file along with additional affirmative defenses. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011) ("[A] defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint." (quoting Jay A. Grenig, Alternative Dispute Resolution § 23:3 at 574 (3d ed. 2005)); *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1270 (11th Cir. 2002); *Zenith Quest Int'l, LLC v. Topali Ship Mgmt., Inc.*, No. 12-cv-23233, 2012 WL 12867955, at *1 (S.D. Fla. Nov. 6, 2012).

**PRELIMINARY STATEMENT**

Plaintiffs are former employee of TS, a company that specializes in healthcare staffing and, specifically, the temporary placement of nurses at various hospitals around the country; it places what are referred to in the industry as "travel nurses." Plaintiffs worked as travel nurses for TS; Baxter worked in Florida, and Summers worked in California.

Plaintiffs agreed to submit any and all disputes arising out of or in any way related to their employments to binding arbitration, including but not limited to claims for breaches of contract, violations of state labor and employment laws, unpaid compensation, expenses or wages, and/or violations of any other federal, state or local statute, ordinance or regulation, contract, tort or common law (generally referred to separately as Baxter's or Summers's "Agreement"). (A copy of Baxter's Arbitration Agreement, together with tracking data confirming that Baxter viewed and executed the Arbitration Agreement, is attached here as Exhibit A; a copy of Summers's Arbitration Agreement, together with tracking data confirming that Summers viewed and executed the Arbitration Agreement, is attached here as Exhibit B.)

Additionally, Plaintiffs expressly agreed to waive their right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in arbitration or otherwise. (Exhibits A and B.)

Thus, all of the claims in the Complaint—common law violations sounding in breach of contract and fraud and statutory violations of state wage-and-hour laws and the Fair Labor Standards Act ("FLSA")—are subject to the arbitration and the class and collective waiver provisions. Accordingly, the Court should strike the class and collective allegations, compel separate and individual arbitrations of each Plaintiff's claims and dismiss the action, or, alternatively, stay the action pending the outcome of the arbitrations of each Plaintiff's claims.

## STATEMENT OF RELEVANT FACTS

A.    **Defendants Cross Country Healthcare, Inc. and Travel Staff, LLC**

CCH is a healthcare staffing agency with operations throughout the United States. (Compl., ¶ 14.) Healthcare facilities in need of temporary staffing contract with CCH to provide healthcare personnel and services, including but not limited to the provision of travel nurses. (*Id.*) Once contracted with a healthcare facility to provide a temporary travel nurse, CCH separately engages TS to manage and arrange the assignment of that travel nurse to the contracted healthcare facility. (*Id.* at ¶ 9.)

B.    **Plaintiffs**

    1.    *Plaintiff Baxter*

In March 2022, TS offered a temporary assignment to Baxter in Gainesville, Florida. (*Id.* at ¶ 19.) On March 25, 2021, before he received that (and other) assignments from TS, Baxter executed an arbitration agreement. (*See* Exhibit A.). Baxter's Agreement, in relevant part, states:

> In consideration of the mutual promises contained herein, Undersigned Employee ("Employee") and Travel Staff, LLC ("Company") (collectively, the "Parties") agree that **binding arbitration shall be the exclusive means of resolving all claims between them, whether or not arising out of or in any way related to Employee's employment with Company** or the termination thereof, and including, but not limited to, disputes involving Company clients and vendors. Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any covered claim. A "covered claim" is any claim (except a claim that by law is nonarbitrable or that is specifically exempted in Section D below) now existing or arising in the future, including but not limited to a claim for: breach of contract; violation of any provision of the state labor and employment laws; unpaid expenses or wages; unpaid compensation or penalties for missed meal or rest breaks; wrongful termination; unfair competition; discrimination, harassment or unlawful retaliation; slander or libel' intentional interference with contractual relations or prospective economic advantage; breach of the duty of loyalty; intentional or negligent infliction of emotional distress; conversion; and/or violation of any other federal, state or local statute, ordinance or regulation or constitutional, contract, tort or common law theory. This does not include claims that may not be arbitrated as a matter of law. As to any covered claim, each party waives the right to trial by jury or judge to the extent permitted by law. **Each party also waives the right to bring, maintain, participate in, or receive money from, any class, collective, or**

> **representative proceeding, whether in arbitration or otherwise.** However, nothing prohibits the arbitrator from consolidating claims filed by individual employees in a single arbitration proceeding so long as the arbitrator does not certify (conditionally or otherwise) a collective, class, or permit a representative action that includes individuals who have not themselves already submitted their own individual claims. Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted activity, as discussed in Section F below, even if that activity is in breach of this Agreement.

(*Id.*) (emphasis added).

By signing the Agreement, Baxter agreed that "binding arbitration shall be the exclusive means of resolving all claims" arising out of or in any way related to his employment, including but not limited to claims sounding in breach of contract; violation of any provision of the state labor and employment laws; unpaid expenses or wages; and violation of any federal, state or local statute, ordinance or regulation or constitutional, contract, tort or common law theory. (*Id.*)

On July 29, 2022, Baxter filed a Complaint on behalf of himself and a putative class/collective in this Court. (Dkt. No. 1.) On August 12, 2022, Baxter filed an Amended Complaint adding Summers as an additional named plaintiff but otherwise retaining the same substantive allegations. (Dkt. No. 11.) With respect to Baxter, the Complaint only contains claims arising out of Baxter's employment with TS—namely: wage statute violations under the FLSA and state laws; fraudulent misrepresentations as to the terms and conditions of his temporary assignments; and breach of contact. (*See generally id.*)

    2.  ***Plaintiff Summers***

In March 2022, TS offered a temporary assignment to Summers in Walnut Creek, California. (Compl. at ¶ 26.) On March 6, 2022, before she received that (and other), Summers

executed an arbitration agreement. (*See* Exhibit B.). Summers's Agreement, in relevant part, states:

> In consideration of the mutual promises contained herein, Undersigned Employee ("Employee") and Travel Staff, LLC ("Company") (collectively, the "Parties") agree that **binding arbitration shall be the exclusive means of resolving all claims between them, whether or not arising out of or in any way related to Employee's employment with Company** or the termination thereof, and including, but not limited to, disputes involving Company clients and vendors. Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any covered claim. A "covered claim" is any claim (except a claim that by law is nonarbitrable or that is specifically exempted in Section D below) now existing or arising in the future, including but not limited to a claim for: breach of contract; violation of any provision of the state labor and employment laws; unpaid expenses or wages; unpaid compensation or penalties for missed meal or rest breaks; wrongful termination; unfair competition; discrimination, harassment or unlawful retaliation; slander or libel' intentional interference with contractual relations or prospective economic advantage; breach of the duty of loyalty; intentional or negligent infliction of emotional distress; conversion; and/or violation of any other federal, state or local statute, ordinance or regulation or constitutional , contract, tort or common law theory. This does not include claims that may not be arbitrated as a matter of law. As to any covered claim, each party waives the right to trial by jury or judge to the extent permitted by law. **Each party also waives the right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in arbitration or otherwise.** However, nothing prohibits the arbitrator from consolidating claims filed by individual employees in a single arbitration proceeding so long as the arbitrator does not certify (conditionally or otherwise) a collective, class, or permit a representative action that includes individuals who have not themselves already submitted their own individual claims. Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted activity, as discussed in Section F below, even if that activity is in breach of this Agreement.

(*Id.*) (emphasis added).

By signing the Agreement, Summers agreed that "binding arbitration shall be the exclusive means of resolving all claims" arising out of or in any way related to her employment, including but not limited to claims sounding in breach of contract; violation of any provision of the state labor and employment laws; unpaid expenses or wages; and violation of any federal, state or local statute, ordinance or regulation or constitutional, contract, tort or common law theory. (*Id.*)

5

On August 12, 2022, Summers joined Baxter as a named plaintiff and filed an Amended Complaint. (Dkt. No. 11.) With respect to Summers, the Complaint only contains claims arising out of her employment with TS—namely: wage statute violations under the FLSA and state laws; fraudulent misrepresentations as to the terms and conditions of his temporary assignments; and breach of contact. (*See generally id.*)

## ARGUMENT

**I.  This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Because the Parties Agreed to a Mandatory Arbitration Clause and a Class Action Waiver.**

"A motion to compel arbitration is treated as a motion to dismiss for lack of subject-matter jurisdiction." *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).) Accordingly, the Court may consider matters "outside the four corners of the Complaint[,]" and may conclude as a matter of law that the parties entered into an arbitration agreement. *See id.*

In addition, the Court applies the same standard to a motion to strike class allegations based on a class action waiver within an arbitration agreement. *See, e.g.*, *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (affirming order compelling individual arbitration and holding that parties' class action waiver contained in arbitration provision was enforceable).

**A.  Plaintiffs Baxter and Summers Agreed to Binding Arbitration**

Plaintiffs' Agreements to arbitrate are governed by and enforceable under the FAA. The FAA, which applies to written arbitration provisions contained in any contract evidencing commerce, establishes a liberal national policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); 9 U.S.C. § 2. The United States Supreme Court has repeatedly emphasized that the FAA embodies a "strong federal policy in favor of arbitration agreements" that requires courts to "rigorously enforce agreements to arbitrate." *See*

6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that "overarching purpose" of FAA "is to ensure enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings" between parties); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Indeed, the central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quotations omitted).

Indeed, "[t]he statute's text ... 'requires courts to enforce the bargain of the parties to arbitrate.'" *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2012); *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'").

This public policy favoring arbitration and the FAA's provisions extends to agreements to arbitrate employment-related claims (with exceptions not relevant here), both under federal and state laws. *See Caley*, 428 F.3d at 1367 (citing *Circuit City v. Adams*, 532 U.S. 105, 119 (2001)); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002)); *Chase Manhattan Inv. Servs., Inc. v. Miranda*, 658 So. 2d 181, 182 (Fla. 3d DCA 1995) (recognizing "the strong bias in favor of arbitration mandated both by the applicable federal law … and by our own").

Pursuant to the FAA, courts conduct a three-step inquiry to determine whether the parties entered into an enforceable arbitration agreement: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *See Polvent v. Global Fine Arts, Inc.*, No. 14-cv-21569, 2014 WL 4672442, at *2-3 (S.D. Fla. Sept. 18, 2014) (granting motion to compel arbitration). Here, there can be no dispute that these requirements have been met: (1) a valid arbitration agreement exists between Plaintiffs and

TS; (2) the Agreements plainly (and expressly) cover all claims raised in Plaintiffs' Complaint, thereby creating an arbitrable issue; and (3) the right to arbitrate has not been waived.

### 1. *Valid arbitration agreements exist between Plaintiffs Baxter and Summers and TS.*

The Agreements between Baxter, Summers and TS are valid and enforceable. An agreement to arbitrate, including one entered into between an employee and employer, is treated like any other contract, and in evaluating whether a binding contract arose between the parties, courts apply the contract law of the particular state that governs the formation of a contract. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017); *Caley*, 428 F.3d at 1369. Federal policy requires courts to construe arbitration clauses as broadly as possible with all ambiguities resolved in favor of arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

Under Florida law, the formation of an enforceable contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *See Jackson v. Home Team Pest Def., Inc.*, No. 6:13-cv-916, 2013 WL 6051391, at *5 (M.D. Fla. Nov. 15, 2013) (citing *W. Constr. Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012)).

Here, Plaintiffs executed their respective Agreements, which contain all the terms and conditions of arbitration, and willingly agreed to be bound by those terms and conditions. (Exhibits A and B.) Enforceable arbitration agreements were formed because TS offered temporary assignments to Plaintiffs and, as a condition of those assignments, included a mutual agreement to submit all disputes between the parties to binding arbitration, which Plaintiffs accepted for the consideration of employment. *See Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1312-13 (S.D. Fla. 2009) (holding that under Florida law, employee's arbitration agreement

8

with employer was supported by consideration, where agreement contained mutual promises to arbitrate, and employee received additional consideration in the form of continued employment); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (holding that arbitration agreement was valid and enforceable because it was supported by mutual obligations to arbitrate); *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("[T]he agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same").

For the foregoing reasons, a valid and enforceable agreement to arbitrate exists.

### 2. *The Agreements clearly cover all claims raised in Plaintiff Baxter and Summers's Complaint, thereby creating an arbitrable issue.*

By their express terms, the Agreements plainly apply to all of the claims in Plaintiffs' Complaint, each of which arises out of or relates to their employment as travel nurses with TS.

First, the Supreme Court has held that statute-based employment claims, such as those Plaintiffs have asserted here (*e.g.*, under the FLSA), are properly the subject of arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Second, the Agreements, by their clear and unambiguous terms, expressly state that Plaintiffs' claims are covered, and even if there are any doubts as to the scope of arbitrable issues, they "should be resolved in favor of arbitration." *See Moses H. Cone*, 460 U.S. at 24-25. "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-cv-20468, 2014 WL 4063046, at *4 (S.D. Fla. Aug. 15, 2014) (compelling arbitration and stating that "[s]o long as a dispute 'touch[es]' on a matter covered by the arbitration clause, it must be arbitrated.")

Here, the Agreements apply to any disputes or claims arising out of or relating to the employment relationships between Plaintiffs and TS, including any claims sounding in breach of contract, violations of any provision of the state labor and employment laws, unpaid expenses or wages, and violations of any federal, state or local statute, ordinance or regulation or constitutional, contract, tort or common law theory. (Exhibits A and B.) Each and every cause of action that Plaintiffs bring here relates solely to their employment relationships with TS. (*See* Compl. at ¶¶ 59-138.)

Although CCH is not identified as a "Party" to the Agreement, both TS and CCH may seek, and obtain, the relief sought here, because Plaintiffs allege in their Complaint that CCH and TS are acting as one entity. Throughout the Complaint there are numerous allegations of joint misconduct or a joint relationship between the two Defendants. (*See* Compl. at ¶¶ 58-64.) These allegations estop Plaintiffs from avoiding arbitration with CCH. *See Leece v. GA BNRV Sales, LLC*, No. 21-cv-308, 2021 WL 7542411, at *3 (M.D. Fla. July 20, 2021) (granting defendants motion to compel arbitration).

Accordingly, Plaintiffs' claims unquestionably fall within the scope of the arbitration provision of the Agreements.

### 3. *Defendants' right to arbitrate has not been waived.*

Defendants have not waived their right to arbitrate in any way.

"A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *See Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990).

Here, however, Defendants have responded to Plaintiffs' Complaint by filing the instant Motion to Compel and Dismiss and thus have not waived their right to arbitrate. *See Abdullah v.*

*Am. Express Co.*, No. 12-cv-1037, 2012 WL 6867675, at *5 (M.D. Fla. Dec. 19, 2012) (holding that by responding to plaintiff's complaint with motion to dismiss and compel arbitration, defendant did not waive its right to arbitrate). Defendants have not filed an Answer and have not otherwise engaged in litigation in a manner that would rise to the level of waiver.

### B. Plaintiffs Agreed to Binding Arbitration on an Individual Basis, and this Court Should Strike the Class and Collective Action Allegations

Upon compelling arbitration, the Court should strike Plaintiffs' class and collective action allegations because Plaintiffs are bound by valid and enforceable arbitration agreements with respect to Plaintiffs' claims, which contain a waiver of class and collective action claims. Both the United States Supreme Court and the Eleventh Circuit have upheld the application of such class action waivers in the arbitration context. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1236 (11th Cir. 2012) ("Under *Concepcion*, both the class action waiver and the arbitration clause must be enforced according to their terms"); *Cruz*, 648 F.3d at 1210 (affirming lower court order compelling individual arbitration and holding that parties' class action waiver contained in arbitration provision was enforceable).

Here, Plaintiffs' class and collective allegations must be stricken because the parties agreed that any claims would be brought on an individual basis.[2] *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:08-CV-22463-JLK, 2019 WL 6838631, at *8 (S.D. Fla. Sept. 26, 2019), *aff'd*, 856 F. App'x 238 (11th Cir. 2021) (dismissing claims of unnamed class members without prejudice to them bringing claims in individual arbitration); *Rimel v. Uber Techs., Inc.*, No. 615CV2191ORL41KRS, 2016 WL 6246812, at *8 (M.D. Fla. Aug. 4, 2016) ("Based on these

---

[2] To the extent the Arbitration Agreements permit consolidation of individual claims, the appropriateness of consolidation of otherwise individual claims can only be determined by the arbitrator. (*See* Exhibits A and B.)

11

authorities, Defendants' request that the Court strike Rimel's class action allegations is well taken."), *report and recommendation adopted*, 246 F. Supp. 3d 1317 (M.D. Fla. 2017); *see also Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360, 1369 (N.D. Ga. 2020) ("Because it does not run afoul of general contract principles, the Court holds the class action waiver is enforceable.").

### C. The Court Should Dismiss the Complaint with Prejudice

"A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when all the issues raised in … court must be submitted to arbitration." *Olsher Metals Corp. v. Olsher*, No. 01-cv-3212, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2004); *see also Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 87 (2000); *Emp's Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1326 (11th Cir. 2001) (recognizing that the dismissal of an action in favor of arbitration was an appropriate procedural decision).

Here, since all of Plaintiffs' claims are subject to arbitration and the class and collective actions should be stricken, nothing will remain for this Court to resolve once arbitration is compelled. Dismissal with prejudice is thus appropriate. *See Mackler v. Fitness Int'l, LLC*, No. 16-cv-80150, 2016 WL 7756623, at *5 (S.D. Fla. Apr. 22, 2016) (compelling arbitration and dismissing district court action with prejudice); *Hodgson v. NCL (Bah.), Ltd.*, 151 F. Supp. 3d 1315, 1316-17 (S.D. Fla. 2015) (compelling arbitration and dismissing complaint) (collecting cases); *Pysarenko v. Carnival Corp.*, No. 14-cv-20010, 2014 WL 1745048, at *8 (S.D. Fla. Apr. 30, 2014) (same), *aff'd*, 581 F. App'x 844 (11th Cir. 2014); *24 Go Wireless, Inc. v. AT & T Mobility II, LLC*, No. 11-cv-20930, 2011 WL 2607099, at *3 (S.D. Fla. June 30, 2011) (same).

The rationale for dismissal of an action with prejudice, rather than staying of the action, is that staying the action "serve[s] no purpose because any post-arbitration remedies sought by the parties would be limited, and would not involve a merits adjudication of the controversy." *Kozma*

*v. Hunter Scott Fin., L.L.C.*, No. 09-cv-80502, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010). Dismissal with prejudice is therefore appropriate here.

### II.     Alternatively, the Court Should Stay these Proceedings Pending the Conclusion of Arbitration.

If this Court is inclined to compel arbitration but not dismiss Plaintiffs' claims, all proceedings related to those claims in this Court should still be stayed. 9 U.S.C. § 3; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (once it is determined that the claims asserted in a pending action are subject to an arbitration agreement, the FAA mandates that the proceedings be stayed pending arbitration).

Plaintiffs' claims may be stayed because they were brought upon an issue "referable to arbitration." *See Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1314-15 n.14 (11th Cir. 2002).

In sum, while dismissal with prejudice is the appropriate remedy, if this Court chooses not to grant such relief then this matter should be stayed pending arbitration.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, compelling this case to arbitration, striking the class and collective action claims and dismissing this case with prejudice. Alternatively, the Court should compel this case to arbitration, dismiss the class and collective action claims and stay all further proceedings until the arbitration is complete.

Dated: September 16, 2022

/s/ *Jurate Schwartz*
Jurate Schwartz, Esq.
Fla. Bar No. 0712094
PROSKAUER ROSE LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431
Telephone: (561) 995-4760
Facsimile: (561) 241-7145
Email: jschwartz@proskauer.com
Secondary: florida.labor@proskauer.com

Steven J. Pearlman (*Pro Hac Vice to be submitted*)
PROSKAUER ROSE LLP
70 West Madison
Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3545
Facsimile: (312) 962-3551
Email: spearlman@proskauer.com

P. Kramer Rice (*Pro Hac Vice to be submitted*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212-969-3406
Facsimile: (212) 969-2900
Email: krice@proskauer.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on the below counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Jurate Schwartz*
Jurate Schwartz