UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81137-CIV-CANNON

**JOSHUA BAXTER** and **SANDRA J. SUMMERS,**
individually and on behalf of others similarly situated,

    Plaintiffs,

v.

**CROSS COUNTRY HEALTHCARE,
INC.,** and **TRAVEL STAFF, LLC**,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION
## TO COMPEL ARBITRATION AND STAY ACTION

**THIS CAUSE** comes before the Court upon Defendants' Motion to Compel Individual Arbitration and to Stay the Case (the "Motion") [ECF No. 21], filed on September 16, 2022. Defendants seek to dismiss the Complaint, or in the alternative, to stay this proceeding pending completion of arbitration proceedings [ECF No. 21 p. 13]. Plaintiffs oppose the Motion, arguing that their claims are not subject to an enforceable arbitration agreement [ECF No. 25].

The Court has reviewed the Motion, Plaintiffs' Response [ECF No. 24], Defendants' Reply [ECF No. 25], and the full record. For the reasons set forth below, Defendants' Motion [ECF No. 21] is **GRANTED**. Pursuant to their signed arbitration agreements, an arbitrator must decide the applicability and enforceability of the parties' agreements [ECF Nos. 21-1, 21-2]. The case is **STAYED** pending the outcome of arbitration proceedings.

CASE NO. 22-81137-CIV-CANNON

## RELEVANT BACKGROUND

On August 12, 2022, named Plaintiffs Joshua Baxter and Sandra Summers filed an Amended Class and Collective Action Complaint against Defendant Cross Country Healthcare, Inc. ("CCH") and its wholly owned subsidiary Travel Staff, LLC [ECF No. 11]. Travel Staff, LLC ("Travel Staff") is "not truly a sperate and distinct entity but a mere division of [CCH]," and thus "it is proper to refer to them as one company for the purposes of this case" [ECF No. 11 ¶¶ 9–10]. Defendants specialize in healthcare staffing and the placement of temporary nurses at various hospitals around the country [ECF No. 21 p. 2; ECF No. 11 ¶ 14]. Plaintiff Baxter worked as a travel nurse for Travel Staff in Florida, and Plaintiff Summers worked as a travel nurse for Travel Staff in California. Plaintiffs' eleven claims generally allege improper reduction of pay rates, failure to pay overtime, and breach of contract under the Fair Labor Standards Act, state wage payment laws, and common law theories of breach of contract and fraudulent inducement and concealment [ECF No. 11 ¶¶ 23, 30–31, 44, 59–69].

After Plaintiffs filed their Amended Complaint, Defendants filed the instant Motion to Compel Individual Arbitration and to Stay the Case [ECF No. 21]. Defendants attach to the Motion arbitration agreements signed by Plaintiff Baxter and Plaintiff Summers, and both agreements include broad language that (1) "binding arbitration shall be the exclusive means of resolving all claims between [the parties]" and (2) the "arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of [the] Agreement" [ECF No. 21-1 p. 2; ECF No. 21-2 p. 2]. Relying on those broad agreements, Defendants maintain that "[e]ach and every cause of action that Plaintiffs bring in this case relates solely to their employment relationships with [Defendants]" [ECF No. 21 p. 10]. Defendants also contend that any threshold issues of arbitrability are delegated to the arbitrator pursuant to the delegation provisions in the arbitration agreements [ECF No. 29 pp. 8–14].

Plaintiffs respond that Baxter's claims are not covered by an arbitration agreement, and that even if they were, both Baxter's and Summers' agreements are void [ECF No. 25 pp. 1–2]. Specifically, Plaintiff Baxter says that (1) he entered into three different assignment-specific agreements with Travel Staff for assignments at three different hospitals; (2) he signed an arbitration agreement only as to the second assignment; and (3) his claim in this case concerns the third assignment only, not the first or second, and thus he should not be compelled to arbitrate [ECF No. 25 pp. 11–14]. As to Plaintiff Summers, Plaintiffs do not dispute that Summers signed a broad arbitration agreement that, on its face, covers the claims in the Amended Complaint.[1] But Plaintiffs nevertheless argue that the arbitration agreements are broadly unenforceable for two reasons: first, Plaintiffs did not receive a written offer of employment prior to signing the agreement, and thus "no meeting of the minds" occurred to validate the agreements [ECF No. 25 pp. 15–22], and second, the agreements are "voidable because they were fraudulently induced" [ECF No. 25 pp. 11, 22 (claiming that Defendants required Plaintiffs to sign a "standalone arbitration agreement" before they entered into employment contracts while failing to disclose that Defendants "did not intend to honor their subsequent employment contracts or pay the compensation the parties agreed upon")]. Plaintiffs also generally assert that Defendants' "fraud" negates the enforceability of the delegation provision in the arbitration agreements [ECF No. 25 pp. 22–29].

The Motion is ripe for adjudication.

---

[1] [ECF No. 25 p. 17–18 (stating that Agreements required Plaintiffs to "waive their right to a 'trial by jury or judge," along with 'the right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in arbitration or otherwise'" (quoting ECF Nos. 21-1, 21-2))].

CASE NO. 22-81137-CIV-CANNON

## LEGAL STANDARD

Under the Federal Arbitration Act (the "FAA"), a contract to settle a controversy arising out of such contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects both "'the fundamental principle that arbitration is a matter of contract'" and "a 'liberal federal policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

Generally, there are two types of arbitration provisions: the classic arbitration agreement, and the "delegation" arbitration agreement. *Attix v. Carrington Mortgs. Servs., LLC*, 35 F.4th 1284, 1294–95 (11th Cir. 2022).

"The classic arbitration agreement is an agreement to arbitrate any claims arising from a contract between two parties." *Id.* at 1294. Thus, the "'merits' of the parties' claims" will be settled by arbitration if a dispute arises. *Id.* at 1295. Before enforcing this type of arbitration agreement, the court should ensure (1) "that the agreement was formed and that it applies to the dispute at hand," and (2) that "no grounds render it invalid or unenforceable." *Id.* at 1294.

Delegation agreements occur when parties agree "not only to arbitrate the merits of any claims that arise from their contract, but also to arbitrate any 'threshold' or 'gateway' questions about the 'arbitrability' of those claims, such as questions about the 'enforceability, scope, [or] applicability' of the parties' agreement to arbitrate their claims." *Id*. at 1295 (quoting *Jones v. Waffle House, Inc*., 866 F.3d 1257, 1264 (11th Cir. 2017)). These types of arbitration agreements "delegate[] the resolution of disputes about the arbitrability of the parties' claims to an arbitrator." *Id.* A court must determine (1) "that the arbitration agreement was formed and that it applies to the dispute at hand," and (2) "that no grounds render it invalid or unenforceable." *Id.* Importantly,

4

however, when there is clear evidence that "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide" threshold issues such as whether the agreement is enforceable or applicable to the parties' dispute. *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019)). "To overcome a delegation agreement, a party must challenge the validity or enforceability of the parties' precise agreements to arbitrate threshold arbitration issues." *Id.*

## DISCUSSION

The Court first must determine whether there is an arbitration agreement between the parties that includes a provision delegating questions of arbitrability to an arbitrator and then whether Plaintiffs specifically challenge the enforceability of the delegation provision. The answer to the first question is yes; the answer to the second is no; and the net result is that an arbitrator, not this Court, must determine the enforceability and applicability of the parties' signed arbitration agreements.

First, without engaging Baxter's claim that his arbitration agreement does not cover his claims in the Amended Complaint, the evidence is clear that both Plaintiffs Baxter and Summers signed arbitration agreements with Defendants [ECF Nos. 21-1, 21-2]. Summers does not dispute that she executed an arbitration agreement with Defendant CCH that required all claims to be submitted to an arbitrator and waived her right to bring or participate in a class action [ECF No. 21-2]. And although Baxter disagrees that his arbitration agreement covers the instant controversy, he does not disagree that he signed an arbitration agreement with Defendant CCH at least as to his second assignment [ECF No. 25 pp. 17–18].

Second, the signed arbitration agreements include an express provision giving the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this Agreement" [ECF No. 21-1 p. 2; ECF No. 21-2 p. 2]. This language is

5

unmistakable; Plaintiffs do not disagree that it delegates to the arbitrator even the threshold issue of whether the arbitration agreement is enforceable [ECF No. 25 p. 17]; and courts have enforced such delegation provisions as valid under 9 U.S.C. § 2 absent a challenge to the delegation provision specifically. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 72; *Attix*, 35 F.4th at 1297.

Because the parties' agreements include an express delegation provision, the Court next addresses whether Plaintiffs specifically challenge the delegation provision. They do not.

As noted, "where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable— the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015) (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 72). "Under this rule, if a party successfully challenges the validity or enforceability of a delegation agreement, the court should proceed to resolve any challenges to the validity or enforceability of the parties' primary arbitration agreement, per the default rule assigning threshold arbitrability issues to the court's review." *Attix*, 35 F.4th at 1304. "A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *Id.* In other words, because a challenge to a delegation agreement is a matter of *substance*, not form, "it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.'" *Id.* Rather, the "substantive nature of the party's challenge [must] meaningfully go" directly to precise provision to delegate threshold arbitrability issues. *Id*.

In this case, a review of Plaintiffs' Response to the Motion to Compel indicates that Plaintiffs' arguments in opposition to arbitration are framed generally against the entire arbitration agreement and the context in which it was signed rather than specifically and directly against the delegation provision itself. The heart of Plaintiffs' argument is that Defendants allegedly failed to

6

disclose that they had no intentions of honoring their subsequent contracts with Plaintiffs concerning agreed-to hourly rates [ECF No. 25 pp. 17–18]. In other words, Plaintiffs say the entire basis under which they signed their arbitration agreements is suspect—without a particularized challenge to the delegation provision itself [*see* ECF No. 29 p. 10]. These arguments do not directly and specifically challenge the delegation provision in the parties' arbitration agreement.

To be sure, Plaintiffs use language in their Response in an apparent attempt to capture the delegation provision [ECF No. 25 p. 23 (arguing that CCH "fraudulently induced Plaintiffs to enter both the standalone arbitration agreement and its delegation provision by withholding from them the material and critical fact that it engaged in a pattern of changing travelers' rates of pay mid-contract")]. But as Defendants correctly point out [ECF No. 29 p. 9], adding the language "and delegation provision" to a few statements scattered throughout—without any precise articulation about why the delegation provision itself is invalid—does not qualify as a specific and direct challenge to the delegation provision. The Eleventh Circuit in *Attix* recently canvassed the authorities in this area, underscoring that any challenge to a delegation provision must be detailed and targeted toward the delegation provision itself. 35 F.4th at 1296 (citing *Rent-A-Ctr., W.*, 561 U.S. at 74; *Parnell*, 804 F.3d at 1146; *Jones*, 866 F.3d at 1265) (listing examples of non-specific challenges to delegation provisions as compared to a general challenge to the entire agreement).

In sum, because it is undisputed that the parties signed an arbitration agreement that includes a provision delegating to an arbitrator all issues of interpretation, applicability, and enforceability of that agreement—and because Plaintiffs do not raise a specific challenge to the delegation provision itself under the applicable standards—the Court must "respect the parties' decision as embodied in the contract" and "may not decide an arbitrability question that the parties have delegated to an arbitrator." *Attix*, 35 F.4th at 1296. Plaintiffs' arguments that the arbitration agreement does not apply to Plaintiff Baxter (because he signed an arbitration agreement that

purportedly applies to a work assignment different from the assignment triggering his claims) is a question of the agreement's applicability. And Plaintiffs' arguments that the arbitration agreements are unenforceable due to a purported lack of mutual assent or alleged fraud on the part of Defendants pertain directly to the enforceability of the arbitration agreement as a whole. Such questions are off limits to this Court and should be decided by an arbitrator pursuant to the parties' agreements. *Id.* at 1303.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Compel Arbitration [ECF No. 21] is **GRANTED**.

2. This case is **STAYED** without prejudice pending arbitration.

3. Every **sixty (60) days** following the date of this Order, the parties are directed to **jointly** file status reports apprising the Court of the status of the dispute resolution process.

4. The Clerk of Court shall **CLOSE** this case for administrative purposes only. Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 2nd day of November 2022.

AILEEN M. CANNON<br>
UNITED STATES DISTRICT JUDGE

cc: counsel of record